# $\mathfrak{Staunton}$

## L. Paul Myers, et al. v. Iris Hancock.

September 11, 1946.

Record No. 3065.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*W. B. Snidow*, for the plaintiffs in error.

*Chester J. Stafford* and *J. S. Andrews*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mrs. Iris S. Hancock instituted an action of detinue in the trial justice court of Giles county against L. Paul Myers and Minnie F. Myers, for the recovery of the possession of one electric hot water heater and other articles of personal property. Upon an appeal to the circuit court the verdict of the jury awarded to the plaintiff all of the articles mentioned in the warrant.

In this court only the electric hot water heater is involved. No question is being raised as to the other articles of personalty.

At the trial in the circuit court the testimony offered on behalf of the plaintiff disclosed that Mrs. Hancock, being the owner of a certain piece of residential property in Pearisburg, had installed therein a forty-gallon electric hot water heater. This heater was connected with the hot water heating system which was already in the house, and it was placed in the basement. It stood on legs on the concrete floor. It could be removed without defacing, destroying or injuring the house by cutting the pipes or unscrewing the joints and closing up the openings with plugs, and disconnecting the electric current. There were other sources of hot water. It could be obtained from the laundry stove which was installed in the basement and also from the heating furnace. These were connected with the water system.

The petitioners and Mrs. Hancock entered into an agreement for the purchase and sale of the residence. The parties were brought together by Mr. Robert H. Woods, who was not a real estate agent, and who acted as a friend of both parties. He testified that at the time he talked with Mrs. Hancock she informed him that she would sell the property but that she would reserve the electric hot water heater and the other articles of personal property in question. He further testified that he conveyed this information to Mr. Myers and made it clear to him that the electric hot water heater would not pass with the residence. Mr. Woods further testified that Mr. Myers agreed to take the property on the terms proposed by Mrs. Hancock.

Later the deed was prepared conveying the property from Mrs. Hancock to Mr. Myers and his wife but there was no reservation or mention in the deed of the electric hot water heater. Still later Mrs. Hancock demanded the delivery of the possession of the heater, whereupon Mr. and Mrs. Myers claimed that they had purchased the heater along with the house, and refused to deliver the possession. Thereupon, this action of detinue was instituted.

The contention of the plaintiffs in error is that the electric hot water heater was so permanently attached to the freehold that it became a real fixture and passed as a part of the real estate under the deed; that it was placed in the residence by Mrs. Hancock, the owner, with the intention that it should become a part of the real estate.

The contention of the appellee is that under the preliminary agreement between herself and Mr. Myers, which was brought about by Mr. Woods, the electric hot water heater was to be reserved to her and that it was not a part of the real estate but only an article of personal property.

The plaintiffs in error assign as error that the court erred in admitting the testimony of Mr. Woods, in that it tended to vary the terms of the deed. Error is assigned to the giving of an instruction. It is also contended that the verdict is contrary to the law and the evidence.

A great deal has been written about real fixtures. Perhaps the clearest and most logical rule on the subject is found in Vol. 1, section 36 of Minor on Real Property, 2d Ed. (Ribble). There it is said:

"If the proprietor of the land himself annexes the chattels, a doubt as to his intention to annex them permanently will in most cases be resolved in favor of such an intent, upon the theory that his design is to place permanent improvements upon his property, which will enhance its usefulness and consequently its market value. Such fixtures are in general real fixtures, and become a permanent part of the land or buildings to which they are attached.

"Hence, if the owner of the inheritance die intestate, such fixtures ordinarily descend to the heir, together with

the land, and do not, unless previously severed by the owner, go to his personal representative. So also, if he sell or convey the land, not having severed the chattels therefrom, they pass with the land to which they are annexed, and the same is true if he mortgage it, unless the chattels themselves are subject to mortgage or lien at the time they are annexed.

"In like manner, they will pass by a devise of the land, though not specially mentioned, and, being part of the land, they cannot be levied upon under an execution of *fieri facias.*

"All that has been said above is subject to the qualification that the fee simple owner, after annexing the chattels and thus giving them the character of real estate, may, at any time before the rights of third parties to the land intervene, sever the connection, and thus restore to the chattels their character of personalty distinct from the land.

"This severance may be actual, by detachment of the fixture, or it may be constructive, by express or implied agreement to that effect on the part of the owner of the land.

"Thus, if the owner of the land sells or agrees to sell the fixture separate from the land, or mortgages it, the mere agreement operates as a constructive severance, and makes the fixture an entity distinct from the land, so that it will not pass with the land upon a conveyance of the latter, if the purchaser of the land have notice of such agreement.

"It is worthy of notice that, since, until severance, the fixture is real property, a transfer of the same is a transfer of real property, and must accord with the provisions of the statute of frauds relating to conveyances of, and contracts to convey land."

Thus, it is apparent that, if the fee simple owner annexes the fixture, in cases of doubt it is presumed he intended it to be a part of the realty. In such case, if the owner die intestate, such fixture which has become a part of the realty descends to his heir. If he sells and conveys the land, not having *severed* the fixture therefrom it will pass under the deed to the grantee. But at any time before the

interest of third parties has intervened, the owner may sever the connection and restore the chattel to its original character of personal property. The latter part of the quoted rule set out above is applicable here. Severance may be actual, by a detachment of the fixture, or it may be constructive by express or implied agreement to that effect on the part of the owner of the land and his future grantees.

Here, according to the evidence on behalf of the plaintiff, which we think preponderates, Mrs. Hancock constructively severed the heater from the realty, if it ever was a part thereof, before the sale, by expressly reserving it. The plaintiffs in error agreed to this according to Mr. Woods, a disinterested witness, whose testimony the jury evidently accepted. It being entirely reasonable and credible, we are bound by it.

In fact the trial court, by the instruction complained of, in our view, in effect, correctly laid down the law as above quoted. In the first portion of the instruction it told the jury, "The court instructs the jury that if you believe from the evidence that in the negotiations for the sale of the property, it was understood and agreed that the hot water heater, and window rods and fixtures were reserved by the plaintiff and not included in the sale, then the plaintiff is entitled to recover the same or the alternate value thereof".

The legal effect of this portion of the instruction was that if these parties agreed beforehand that Mrs. Hancock reserved the heater, then by that agreement it was severed from the freehold at that time and became, for all intents and purposes, an article of personalty.

The second portion of the instruction is the part to which the plaintiffs in error object. It is:

" * * but if you believe that such was not the agreement and that said articles were attached to the building in such a way as to become a permanent part of the building, requiring the use of tools to sever them from the building, then you shall find for the defendants."

This instruction left to the jury whether the parties

had previously agreed that Mrs. Hancock should retain the heater. If the jury had resolved this question against her then they were to ascertain and find whether the heater was permanently attached to the building so as to become a real fixture passing under the deed. The jury obviously was governed by the first portion of the instruction and found that there was an agreement between the parties whereby Mrs. Hancock was to retain the heater. Therefore, if it ever was a real fixture it was effectually severed from the realty by the prior agreement of the parties and it became an article of personalty. We think the instruction embodied the correct and applicable law.

Having reached the conclusion that the jury were warranted in finding that the heater had been severed from the freehold by the agreement prior to the delivery of the deed, the testimony as to this verbal agreement, admitted by the trial court, did not violate the parol evidence rule. This testimony did not tend to vary, add to, or contradict the deed. The deed conveyed only the real estate as it was at the time of its delivery. At that time the heater was not a part of it.

The testimony shows beyond doubt that the value of the heater was less than $300, and we having decided that it was not a real fixture, this court, of course, would have no jurisdiction, but rather than dismiss the writ of error as having been improvidently awarded, we prefer to dispose of the cause by affirming the judgment of the trial court.

*Affirmed.*