## Richmond

### Transcontinental Gas Pipe Line Corporation v. Prince William County.

March 9, 1970.

Record No. 7091.

Present, All the Justices.

*Hugh V. White, Jr. (John W. Riely; Evans B. Brasfield; Conrad M. Shumadine; Randolph F. Totten; Hunton, Williams, Gay, Powell and Gibson, on brief), for plaintiff in error.*

*H. Selwyn Smith; Frank A. Hoss, Jr. (Smith & Hoss, on brief), for defendant in error.*

I'ANSON, J., delivered the opinion of the court.

Transcontinental Gas Pipe Line Corporation (Transco) filed in the court below an application under the provisions of § 58-1145, Code of 1950, 1959 Repl. Vol.,[1] for correction of erroneous assessments of taxes by Prince William County for the year 1966 on machinery in use at Transco's compressor station and its underground gas mains in the County. The application alleged, *inter alia*, that the County had erroneously classified and taxed Transco's machinery and permanent underground gas mains as tangible personal property rather than as real property.

The County filed a demurrer and a motion to dimiss on the grounds that the court below lacked jurisdiction to entertain the application in that it should have been filed before the State Corporation Commission under the provisions of Code § 58-672, or, in the alternative, in the Circuit Court of the City of Richmond pursuant to Code § 58-676, and that Transco is not entitled to relief under the provisions of Code § 58-1145. The demurrer was overruled and the motion to dismiss was denied.

After considering several agreed stipulations of fact, hearing evidence *ore tenus*, and visiting Transco's compressor station site, the trial court, in a written opinion, held that the machinery was erroneously taxed as personal property and should have been classified and taxed as real property; and that the gas mains had been properly classified and taxed as tangible personal property because Transco had reserved the right in the right of way and easement agreements to remove its underground gas mains, which indicated that Transco did not intend for the mains to become a part of the realty. An order was entered accordingly, and we granted Transco a writ of error.

Transco's contention on this appeal is that the trial court erred in holding that its permanent underground gas mains were properly classified and taxed by the County as tangible personal property.

The County assigned cross-error to the action of the trial court in denying its motion to dismiss the application and in holding that the machinery used at Transco's compressor station was erroneously classified and assessed by the County as tangible personal property.

The stipulations of fact and the exhibits filed show the following:

Transco is a gas transmission company engaged in transporting natural gas in interstate commerce under certificates of public necessity

---

1. Section amended, Acts of Assembly, 1968, c. 630, Vol. 2, p. 936.

and convenience issued by the Federal Power Commission. It owns, operates and maintains approximately thirty-three miles of gas mains in Prince William County. The mains are buried underground at a minimum depth of thirty inches from the top of pipe.

In order to construct and maintain its system of mains, Transco acquired permanent right of way and easement agreements from the fee simple owners of the land. Ninety-five percent of the mains are installed within the perpetual easements acquired by Transco and the remaining five percent are under highway and railroad property and on land which Transco owns in fee simple. Generally, each right of way and easement agreement contains the language that the interest acquired is for the purpose of "laying, constructing, maintaining, repairing, altering, replacing and removing pipe lines."

The machinery used at the compressor station is located on land owned by Transco in fee simple.

Prior to April 15, 1966, Transco filed with the State Corporation Commission its annual report, as required by Code § 58-588, listing its property in Virginia and giving the value of such property. Thereafter the Commission assessed the value of the property, as required by Code § 58-590, and the clerk of the Commission forwarded to the Board of Supervisors of Prince William County a certified copy of the assessment of the value showing the character of such property, its value and location for the purpose of County taxation, as required by Code § 58-592. The Commission's statement listed the value of the property under several different columns. The relevant ones are entitled: "1. Value of land and improvements thereon," "2. Value of machinery," and "3. Value of mains."

In June 1966 the County established a tax rate, or local levy, of $5.65 per $100 of assessed valuation for tangible personal property, and $3.60 per $100 of assessed valuation for real estate.[2] The Commissioner of Revenue of the County then billed Transco at the real estate rate on property assessed and classified by the Commission as "Land and improvements thereon," "machinery," and "mains." She later changed her position, abated a portion of the initial tax, and levied a supplemental tax based upon a reclassification of machinery used at Transco's compressor station and its underground mains from real to tangible personal property. Transco paid the taxes due under the original tax bills and refused to pay the supplemental assessments.

All of Transco's gas mains in Prince William County are essential

2. See Code § 58-581.

parts of its interstate gas transmission system. The mains are a permanent part of the system and will remain in place for their normal life, subject to the necessity of replacement, maintenance and repair.

An expert witness testified that the methods used by Transco in the preparation and maintenance of its pipe lines would keep the mains in operation for as long as 100 years.

Before reaching the merits of the case, we direct our attention to the County's contention that the trial court erred in denying its motion to dismiss Transco's application for lack of jurisdiction.

We do not agree with the County's argument that the trial court did not have jurisdiction to entertain Transco's application because the Commission classified and assessed Transco's machinery and mains as tangible personal property, and that Transco's remedy, if any, was to apply to the Commission for review and correction, or, in the alternative, to apply to the Circuit Court of the City of Richmond for relief from the classification and assessment made by the Commission.

Code § 58-590 requires the Commission to "assess the *value* of the property of each such corporation." A certified copy of the Commission's report of its "assessment of the value" is forwarded to the county in question, "which shall definitely show the character of the property, its *value* and location." Code § 58-592. The county extends its levy "on the *valuation* fixed by the State Corporation Commission." Code § 58-597. (Italics supplied.)

It is manifest from the above statutes that the Commission assesses value, and value only. None of the statutes requires the Commission to classify and assess Transco's property as real or tangible personal property and it did not do so in this case. The classification of property on the Commission's statement of valuations in no way purports to classify property as real or personal. The purpose of the Commission's statement is to show the character of the property so it can be identified by description to separate the items of property. It is the function of the assessing officer in each locality to classify the property as real or tangible personal property.

Our interpretation of the above Code sections is in accord with a memorandum of Commissioner Catterall of the State Corporation Commission, dated April 19, 1957, to J. C. Masten, Director Public Services Taxation Division, wherein it was stated, p. 5:

"[T]he classification of fixtures as real or personal presents problems of great complexity in thousands of individual cases. Controversies over classification of fixtures have never been adjudicated

by this Commission and it ought not to undertake to adjudicate them. * * *"

See also 43 Va. L. Rev. 1325, 1335-36 (1957); House Document No. 8 (1968 Session), A Report of the Virginia Advisory Legislative Council to the Governor and the General Assembly, p. 21.

Code § 58-672 provides that any corporation or company aggrieved by the action of the Commission may ask for a review by the Commission "in the ascertainment of, or the assessment for taxation of, the *value* of any property * * *." Or in the alternative the company or corporation may appeal to the Circuit Court of the City of Richmond if aggrieved "by any ascertainment or assessment of *value or tax*, made by the Commission * * *." Code § 58-676. Here Transco was not aggrieved by the value or tax placed on its property by the Commission. Its sole contention was that the County erroneously classified and levied a tax on its machinery and mains as tangible personal property instead of classifying and taxing them as real property. Hence Code §§ 58-672 and 58-676 have no application here.

The County says that the second sentence of Code § 58-1145 limits any finding of the Circuit Court of Prince William County to questions of whether the property "is assessed at more than its fair market value or that the assessment is uniform in its application." Hence it is argued that since neither is the case here, Transco cannot maintain this action under that section of the Code. We do not agree with this argument.

The pertinent parts of Code § 58-1145 read as follows:

"Any person assessed with county or city levies or other local taxes on real estate * * * and any person assessed with local levies on personal property * * * aggrieved thereby, may * * * apply for relief to the circuit court of the county * * * wherein such assessment was made. In such proceeding the burden of proof shall be upon the taxpayer to show that the property in question is assessed at more than its fair market value or that the assessment is not uniform in its application * * *."

We have many times held that the word "assessed" used in the first sentence of the statute refers to the imposition of the tax itself; whereas the word "assessed" in the second sentence refers to the determination of the value of the property. *Hoffman* v. *County of*

*Augusta,* 206 Va. 799, 146 S.E.2d 249 (1966); *St. Andrew's Association* v. *City of Richmond,* 203 Va. 630, 125 S.E.2d 864 (1962); *City of Richmond* v. *Eubank,* 179 Va. 70, 18 S.E.2d 397 (1942). The second sentence of the statute does not limit the right conferred by the first sentence. *City of Richmond* v. *Richmond-Petersburg Turnpike Authority,* 204 Va. 596, 598-99, 132 S.E.2d 733, 734-35 (1963).

■ Transco contends that whether its gas mains are real or tangible personal property is to be determined by the law of fixtures and not, as the trial court held, by the provisions in the right of way and easement agreements reserving Transco's right to remove the mains. We agree with that contention.

Three general tests are applied in order to determine whether an item of personal property placed upon realty becomes itself realty. They are: (1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intention of the parties. The intention of the party making the annexation is the chief test to be considered in determining whether the chattel has been converted into a fixture. *Danville Holding Corp.* v. *Clement,* 178 Va. 223, 232, 16 S.E.2d 345, 349 (1941); *Green* v. *Phillips,* 67 Va. (26 Gratt.) 752, 759 (1875).

The present case is controlled by our holding in *City of Newport News* v. *Warwick County,* 159 Va. 571, 166 S.E. 570 (1932). There the City owned and operated a system of waterworks in the County consisting of mains, gates, pipes, hydrants, machinery and meters. The property was assessed by the Commissioner of Revenue of the County as land and improvements. The mains, etc., were located on land owned by the City, beneath public highways, and within easements held by the City. The City reserved the right to remove its water mains and replace them as necessary for the proper operation of the system, and in fact found it necessary to renew half of the mains. We held that the mains, together with the gates, hydrants and pipes annexed thereto, within the limits of the County, constituted fixtures upon the land to which they were attached and were taxable as land. 159 Va. at 601-03, 166 S.E. at 581.

The principle followed in *Newport News, supra,* is in accord with the decisions of other courts. See *Inhabitants of Paris* v. *Norway Water Co.,* 85 Me. 330, 331-32, 27 A. 143, 144 (1893); *Texas Eastern Transmission Corporation* v. *Township of East Amwell,* 82 N.J. Super. 593, 198 A.2d 786 (1964); *Providence Gas Co.* v. *Thurber,*

2 R.I. 15, 22-23, 26, 55 Am. Dec. 621, 623, 625 (1851); *Paris Mountain Water Co.* v. *Woodside*, 133 S.C. 383, 131 S. E. 37, 39 (1925); *State (Tide-Water Pipe Line Co.)* v. *Berry*, 52 N.J.L. 308, 19 A. 665 (1890); *Cumberland Pipe Co.* v. *Lewis*, 17 F.2d 167 (E.D. Ky. 1926).

In the present case the evidence shows that Transco's gas mains are buried in the ground, and thus annexed to the realty. The mains are adapted to the use of the property to which they are annexed, and they are essential to the purpose for which the perpetual easements were acquired and are used. Testimony that the gas mains could be used for a hundred years, because of the methods employed by Transco to preserve and protect them, clearly indicates that it was Transco's intention to permanently annex them to the land in which it has perpetual rights of way and easements. The fact that Transco reserved the right to remove the mains under the provisions of the right of way and easement agreements does not support the conclusion that the mains were not intended to become a part of the realty. The legal right to remove the mains is not synonymous with the intent to remove them. The gas mains are a permanent part of Transco's system and will remain in place for their normal life, subject only to the necessity of replacement, maintenance and repair. Thus it was clearly the intent of Transco to make the gas mains a part of the realty.

We agree with the trial court that the machinery used at Transco's compressor station in Prince William County should be classified as real estate and not as tangible personal property.

When the owner of land annexes chattels, any doubt as to his intention to annex them permanently will usually be resolved in favor of such intent. Such fixtures are real fixtures and become a permanent part of the land or buildings to which they are attached. *Danville Holding Corp.* v. *Clement, supra,* 178 Va. at 232-33, 16 S.E.2d at 349-50 (1941).

Here the machinery was placed in buildings upon land owned by Transco as an essential part of the operation of its gas system. It is clear from the evidence that Transco intended that the machinery become a permanent part of the buildings and land to which they are attached.

For the reasons stated, we hold that the County's assessment of Transco's gas mains as tangible personal property is erroneous and void, and that the mains should be classified and taxed by the Commissioner of Revenue of the County as real property. We further

hold that the trial court correctly decided that the machinery used at Transco's compressor station should be taxed as real estate, and that the tax imposed on it as tangible personal property is erroneous and void. Accordingly, that part of the trial court's order holding that Transco's gas mains were properly assessed and taxed as tangible personal property is reversed and the case is remanded for the entry of an order in accordance with the views expressed herein.

*Affirmed in part; reversed in part; and remanded.*