**In re CONCRETE STRUCTURES, INC. et al., Debtors-in-Possession.**

**John H. HARDING, t/a Harding and Davis Trucking Company, Plaintiff,**

v.

**CONCRETE STRUCTURES, INC., Defendant.**

**Bankruptcy No. 78–00686.**

United States Bankruptcy Court, E. D. Virginia, Richmond Division.

Jan. 29, 1981.

Lewis S. Pendleton, Jr., Richmond, Va., for the plaintiff.

T. J. Markow, Shaia, Stout & Markow, Richmond, Va., for Concrete Structures.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint for the Recovery of Property by John H. Harding, t/a Harding and Davis Trucking Company (Harding and Davis) alleging that a 30′ × 40′ Kendler all-steel building (Building) exists on the land owned by Concrete Structures, Inc. (Structures), Debtor-in-Possession, and is property of Harding and Davis. An Answer was timely filed by Structures alleging that the Building in question is a fixture and, therefore, property of Structures. A trial was held on the Complaint and briefs were requested and received by the Court. Upon the foregoing, the Court renders the following opinion.

## STATEMENT OF THE FACTS

Paul Skubon was the owner of a materials hauling business which provided services to Commonwealth Sand & Gravel Company (Commonwealth) at rates normal in the hauling business. In 1958, Skubon purchased from James Kendler a 30′ × 40′ prefabricated metal building and had the Building erected on property of Commonwealth, as evidenced by a Bill of Sale from Kendler to Skubon, dated July 22, 1958, describing the Building and containing the statement "@ Commonwealth Sand & Gravel Co." Plaintiff's Exhibit 3. The Building was erected on the property of Commonwealth with its consent, the use of the underlying real property by Skubon being a tenancy at will. See Plaintiff's Exhibit 4, ¶ 3. Skubon paid no rent to Commonwealth for the use of the real property.

The Building is erected on a 30′ × 40′ concrete slab and was used as a storage shed and repair shop for dump trucks in Skubon's hauling business. The Building is fastened to the concrete by supports which are integrated into the concrete slab. To remove the structure, the concrete would have to be jackhammered to free the Building supports, and the remainder of the concrete would have to be jackhammered and

removed, which would leave a shallow hole in the ground.

Subsequent to the erection of the Building, Structures purchased from Commonwealth the land on which the Building stands. There were no restrictions or reservation of rights as to the Building in the deed by which Structures acquired title to the real estate.

Mr. J. W. Lacy, current President of Structures, who has been employed by it since 1945, testified he was involved in the acquisition of the property from Commonwealth, and there was no negotiation concerning the inclusion or exclusion of the Building as part of the purchase, the existing buildings thereon being merely incidental to the acquisition of the land.

John Harding of Harding and Davis testified that his company purchased the assets and the business from Paul Skubon in 1976. Harding and Davis continued to provide hauling services for Structures under the same terms and conditions that existed as to Paul Skubon. In the agreement between Paul Skubon, and John Harding and Lewis Davis for the purchase of Skubon's hauling business, there was included in the schedule of property to be transferred a "metal shop building" which is the building in question. The agreement further stated that "[t]he plant of Seller is located upon land owned by Concrete Structures, Inc., and occupancy of the site is in the nature of a tenancy at will." Plaintiff's Exhibit 3. Harding and Davis has ceased the operation of the hauling business, and no longer provides services to Structures. Harding and Davis claims ownership to the Building and proposes to remove it from the premises of Structures.

Structures maintains that this Building is a fixture and, therefore, an asset of Structures.

### CONCLUSIONS OF LAW

The question of the ownership of the Building must be resolved by making a determination of whether the Building constitutes a fixture. If it is a fixture, then Structures is the proper owner of the Build-

ing; otherwise, the property belongs to Harding and Davis. Both Structures and Harding and Davis have argued that the paramount factor in determining whether the Building constitutes a fixture is the intention of the parties making the annexation to the real property, following the criteria set forth in *State Highway and Transportation Commissioner v. Edwards Company, Inc.*, 220 Va. 90, 255 S.E.2d 500, 503 (1979).

> "Three tests are applied in order to determine whether an item of personal property placed upon realty itself becomes realty. They are: (1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intent of the parties. The intent of the party making the annexation is the chief test to be considered in determining whether the chattel has been converted into real property. *Transco. Corp. v. Prince William County*, 210 Va. 550, 555, 172 S.E.2d 757, 761–62 (1970)."

The Court in *Edwards* found that the additions to the real estate were placed thereon by the owner of the real estate and were fixtures. In Virginia that principle has been long established. *Danville Holding Corporation v. Clement*, 178 Va. 223, 16 S.E.2d 345, 349 (1941).

> "'*If the proprietor of the land himself* annexes the chattels, a doubt as to his intention to annex them permanently will in most cases be resolved in favor of such intent, upon the theory that his design is to place permanent improvements upon his property, which will enhance its usefulness and consequently its market value. Such fixtures are in general real fixtures and become a permanent part of the land or buildings to which they are attached.' 1 Minor on Real Property, Ribble (2d Ed.) section 36." (emphasis added)

Here it is clear that annexation and adaptation were achieved. The Building was physically annexed and attached to the real estate and was used as a storage and repair

shed for the dump trucks of Harding and Davis and the prior owner. The evidence is not as clear concerning the intentions of the parties at the time the Building was constructed.

In the present case, however, it was not the act of the owner of the real estate that placed the Building on the property, but that of another, who erected the Building with the consent of the landowner. This significant difference prevents the application of the presumption that a building situated upon real estate is part of the realty when the three tests delineated above are met. On the contrary, just the opposite presumption exists.

"As a general proposition, a building erected by one under a license or with the express consent of the landowner does not become a fixture but remains the personal property of the annexer. Such an agreement may be oral and is not within the statute of frauds, since it involves no sale of an interest in land. Thus, where a building is erected pursuant to an understanding with the landowner that it is to be a mere temporary structure and to be used only for certain purposes, or where there is an understanding that the annexer may remove the structure when and where he pleases without being accountable to anyone, the building remains a chattel and does not become a fixture. *And in the absence of any other facts or circumstances tending to show a different intention, it is generally considered that where the landowner consents to the placing of a building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personalty, an agreement will be implied that such building is to continue personal property.* Where such an agreement is implied, it is immaterial what is the purpose, size, material, or mode of construction of the building." 35 Am.Jur.2d *Fixtures* § 80 (footnotes omitted) (emphasis added)

In *Ingalls v. St. Paul, M. & M. Ry. Co., et al.*, 39 Minn. 479, 40 N.W. 524 (1888) is a case in point. In that case Huntington, who had no interest in the land, erected a building upon property of Stevens. Stevens subsequently conveyed the land to the defendants in the action, who at that time knew that the plaintiffs asserted a claim to the building. Huntington subsequently sold the building to another party, who sold it to the plaintiffs. Regarding "how the house came to be built, Stevens ·testified that between 1861 and 1863 Huntington came to him and wanted a place to put a little building, and Stevens told him he could put in on the land in question, but gave him no interest in the land." *Ingalls, supra* at 524. The court held that where the house was erected by another with the permission of the landowner, he is regarded to be the owner of the building and is equitably entitled to remove the same if he elects. *See also, State v. Ancient Order of United Workmen*, 178 Kan. 69, 283 P.2d 461, 468 (1955) where the court held that:

"... when a landowner consents to the placing of a building on his land by another, without an express agreement as to whether it shall become a part of the realty or remain the property of the person placing it there, in the absence of any other facts and circumstances tending to show a different intention, an agreement will be implied that the building is to remain the property of the one placing it there. There being no other facts and circumstances tending to show a different intention, we hold, therefore, that title to the building was at all times in defendant."

*See also, City of Vallejo v. Burrill*, 64 Cal. App. 399, 221 P. 676 (1924).

The only clear findings before the Court are that the Building was erected by Harding and Davis' predecessor at his own expense, with permission of the owner of the real estate, for which no rent was paid, and no known existence of any written agreement; that any occupancy was as a tenancy at will; that Harding and Davis' acquisition of the assets of Skubon included the purchase of his interest in the Building, and the use of said Building was continual during the time Skubon and Harding and Davis had a hauling contract with Commonwealth and Structures.

In light of the foregoing, the Court finds that the presumption that improvements made to the real estate by its owner constitute fixtures is inapplicable herein for the improvements were made by someone other than the owner of the real estate. Further, the Court finds that a presumption exists that improvements made to real estate by someone other than its owner with permission remains personalty. Relating this to the facts the Court concludes that the Building placed on the real estate retained the identity of personal property and was not acquired by Structures in its purchase of the real property from Commonwealth.

An appropriate order will issue.