In re: JESSEE'S PAVING COMPANY, INC., Debtor.

JESSEE'S PAVING COMPANY, INC., Plaintiff,

v.

WHITE EXCAVATING COMPANY, INC., Defendant.

Bankruptcy No. 7–82–00530.
Adv. No. 7–83–0474.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Jan. 24, 1983.

Mark M. Lawson, Bristol, Va., for plaintiff/debtor.

Matthew J. Cody, Jr., Lebanon, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This matter came on for hearing upon the filing by Jessee's Paving Company, Inc. ("Jessee's Paving"), the Debtor herein, of a Complaint to Recover Property. Debtor alleges that several buildings located on the premises owned in fee by the Defendant, White Excavating Company, Inc. ("White Excavating"), are the personal property of Jessee's Paving. Defendant contends that the buildings in question are fixtures and are, therefore, property of White Excavating. After trial on the merits and submission of memoranda by both parties in support of their positions, the Court renders the following opinion.

### Statement of Facts

In September of 1970, Jessee's Paving leased a parcel of land in Russell County, Virginia from White Excavating's predecessors in interest, James and Emma White. The term of the lease was for one year and was automatically renewable so long as the lessee maintained its paving

business upon the premises and purchased certain business supplies from the lessor. The lease neither required nor prohibited the lessee from constructing buildings or making other improvements to the property and was silent concerning title or disposition of improvements voluntarily made by the lessee during the rental period.

Shortly after the execution of the lease, Jessee's Paving constructed several buildings upon the leased premises. The Debtor did not seek Defendant's approval prior to the construction, nor was any subsequent agreement, written or oral, made between the parties as to ownership of the structures. White Excavating did not object to the improvements. The Debtor had exclusive use of the buildings and paid no rent for their occupation.

The buildings in question included three cinder-block structures mounted on concrete slabs: a "garage" used in servicing equipment, an attached "lab" used in testing asphalt produced by the Debtor, and a separate "control house" for the asphalt plant. The garage and lab had electrical wiring and water supply. The control house was equipped with plumbing and a septic system. A fourth building, a sheet-metal storage shed, was mounted on an asphalt base and housed parts and equipment necessary in the Debtor's business.

Jessee's Paving filed a voluntary Chapter 11 petition in this Court on April 20, 1982. An Order was entered in June, 1983 allowing the Debtor to reject the unexpired lease with White Excavating. Debtor claims ownership of the improvements made to the leasehold and seeks to remove the same.

## Conclusions of law

The question of ownership turns on whether or not the subject buildings constitute fixtures. If they are fixtures, they are the property of White Excavating; otherwise, the buildings are personalty belonging to the Debtor and may be recovered.

■ The Court looks to the applicable Virginia law regarding fixtures. Virginia courts have established general rules to determine whether or not certain property constitutes a fixture. In the absence of any specific agreement between the parties, the following criteria, as set forth in *Danville Holding Corp. v. Clement*, 178 Va. 223, 16 S.E.2d 345, 349 (1941), will be considered:

(1) Annexation of the chattel to the realty, actual or constructive;

(2) its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and

(3) the intention of the owner of the chattel to make it a permanent addition to the freehold.

This three-part test has been frequently cited and applied by the Virginia Supreme Court, most recently in *Transco. Corp. v. Prince William County*, 210 Va. 550, 172 S.E.2d 757 (1970), and *State Highway and Transportation Commission v. Edwards Company, Inc.*, 220 Va. 90, 255 S.E.2d 500 (1979). While there must be actual or constructive annexation under the first part of the test, the method or extent of such annexation is given little weight, except as it relates to the nature of the article, its use, and other surrounding circumstances which reflect the intent of the parties making the annexation. *Danville Holding Corp.*, 316 S.E.2d at 349.

The second part of the three-part test carries greater weight, especially in connection with the element of intention. If the annexed property is essential to the purpose for which the realty is used, it will constitute a fixture, even though its connection with the realty is such that it may be removed without injury to either. *Id.*

The intention of the annexing party is the final and controlling test:

"The test of intention is given a broad signification. It does not imply a secret, undisclosed action of the mind of the owner of the property. The intention need not be expressed in words; it may be inferred from the nature of the article affixed, the purpose for which it was affixed, the relationship of the party

making the annexation, and the structure and mode of annexation."

*Id.*

In the case at hand, it is clear that annexation and adaptation were achieved. The subject buildings were physically attached to the realty and were used in servicing equipment, storage, product testing, and operation of Debtor's business. Debtor's intention at the time the buildings were constructed, however, is not so clearly delineated. Because the lease between Debtor and White Excavating was silent and there was no subsequent written or oral agreement as to the character of the buildings in question, the Court must infer the intent of the parties by the nature of the circumstances surrounding the events.

■ When determining intent, courts are frequently aided by presumptions. One such presumption in the law of fixtures has long been established in Virginia and concerns the relationship of the annexor and the subject realty. Where the *owner* of the realty himself annexes chattels, any doubt as to his intention to permanently affix them will be resolved in favor of such intent, upon the theory that he seeks to permanently enhance the usefulness and market value of his property. *Id.* 316 S.E.2d at 349 [citing 1 *Minor on Real Property*, § 36 (2nd ed.)]. This presumption is not applicable in the present case, however, as the landowner did not erect the buildings on the premises; such acts were performed by the lessee of the property.

Debtor contends that the decision of *In re Concrete Structures*, 9 B.R. 72 (Bkrtcy. E.D.Va.1981), governs the issue of ownership in this matter. In that proceeding, the Bankruptcy Court stated:

"... in the absence of any other facts or circumstances tending to show a different intention, it is generally considered that where the landowner consents to the placing of a building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personalty, an agreement will be implied that such

building is to continue personal property. Where such agreement is implied, it is immaterial what is the purpose, size, material, or mode of construction of the building."

*Id.* at 74.

The Virginia Supreme Court has never had occasion to adopt a presumption to the effect that property annexed to realty by one other than the owner, in the absence of agreement, remains personalty. This Court declines to do so and, accordingly, does not find the holding of *In re Concrete Structures* to be controlling under the facts of this proceeding.

■ Aside from the analysis discussed above, the evidence in the instant case reflects the annexor's intention to permanently improve the real property of the defendant. The nature of the buildings themselves and their mode of annexation indicate a permanent improvement. With the exception of one sheet-metal storage shed mounted on an asphalt base, all of the structures erected by the Debtor consist of cinder blocks mortared together and affixed to the realty on poured concrete slabs. Electrical wiring and plumbing were installed, along with a septic system. Removal of these buildings would cause injury to the structures, as well as the realty. Furthermore, the Debtor was only the lessee of these premises, not the owner. Knowing that the lease contained no provision for ownership of additions and improvements which might be made by a tenant, the Debtor made no effort whatsoever to obtain a written or even oral agreement from the owner of the realty as to ownership and removal of the buildings in question prior to their construction. Many years later, after filing their petition in bankruptcy and rejecting the lease with the defendant, the Debtor is asserting ownership and seeks to remove the buildings as personalty.

In light of the foregoing, this Court finds that the improvements made to the real estate by the Debtor constitute fixtures and are the property of the landowner,

White Excavating. Accordingly, Debtor's complaint to recover said improvements is DENIED.

It is so ORDERED.