In re Mary Alice SHELTON, Ind. & t/a Shelton's Truck Stop & Restaurant, Debtor.

Bankruptcy No. 83–00310–R.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Nov. 16, 1983.

Harry Shaia, Jr., Richmond, Va., for debtor.

Archie C. Berkeley, Jr., Richmond, Va., for Virginia Nat. Bank.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

Debtor herein has claimed exempt under *Va.Code* § 34–4 certain fuel tanks in

ground having an alleged value of $1,374.00. The homestead deed claiming the exemption was recorded timely in the appropriate jurisdiction. Virginia National Bank has filed timely an objection to the exemption. Its objection is not that the debtor cannot or has not properly claimed an exemption in property, but only that the exemption is inferior to its lien arising out of a deed of trust properly recorded prior to the claimed exemption. The debtor argues that the fuel tanks are items of personal property and, therefore, not subject to the bank's deed of trust. After trial on the merits and submission of memoranda by both parties in support of their positions, this Court renders the following opinion.

## STATEMENT OF FACTS

Sometime prior to October 25, 1976, the debtor Mary Alice Shelton purchased approximately six acres of undeveloped real estate in Prince Edward County, Virginia. In order to develop the property into a truckstop providing food and fuel services, the debtor borrowed money from Virginia National Bank ("VNB"). To secure VNB's loan, the debtor gave to the plaintiff a deed of trust on the property in Prince Edward County. The debtor used the loan proceeds to construct a restaurant and truckstop business on the property. VNB recorded its deed of trust on October 25, 1976.

On September 16, 1976, the debtor entered a retail dealer contract with Southall Oil Company ("Southall"). The agreement provided that the debtor would purchase specified quantities of petroleum products from Southall, and that in addition to supplying said petroleum products, Southall would lend to the debtor certain equipment including two 3,000 gallon and one 10,000 gallon fuel tank. Southall also agreed to install the three fuel tanks underground at the truckstop. The fuel tanks were installed on the debtor's property, however, they remained the personal property of Southall pursuant to express provisions of the retail dealer contract.

On or about November 25, 1980, the debtor and Mr. Southall amended the aforesaid retail dealer contract and provided that Southall would release the debtor from the agreement if the debtor sold the truckstop, with the understanding that Southall would receive a fair price for the fuel tanks. Subsequently, on April 26, 1982, the debtor purchased from Southall the subject fuel tanks for $10,000.00. The debtor tendered a cashier's check for $10,000.00 and received from Southall a bill of sale conveying the fuel tanks and terminating the retail dealer contract. Testimony by Rosa Lee Deery established that the debtor obtained the money with which to purchase the fuel tanks from Ms. Deery. Ms. Deery received a second deed of trust on the truckstop to secure this loan. In addition, Ms. Deery testified that she did not claim a lien on the tanks and that the debtor could sell the fuel tanks, if she so desired, to any party.

The debtor testified (1) that she purchased the fuel tanks to escape the retail sales contract with Southall; (2) that she attempted to sell the truckstop as a whole; (3) that the tanks enhanced the truckstop's value; and (4) that she never attempted to sell the tanks separately.

Between April 26, 1982, the date on which the debtor obtained title to the fuel tanks and February 28, 1983, when the debtor filed her voluntary Chapter 7 petition in bankruptcy the fuel tanks remained undisturbed at the location in which they were installed by Southall.

Walter D. Southall, president of Southall, testified with regard to the said fuel tanks that (1) the two 3,000 gallon tanks were buried approximately eight feet in the ground and the 10,000 gallon tank was buried twelve feet underground, but neither were set in concrete; (2) that they had a useful life of approximately 40 to 50 years; (3) that they were connected to the building by fuel lines and electrical wires; (4) that the tanks were valued at approximately $10,000.00; (5) that the cost of digging up and removing said fuel tanks would cost approximately $3,000.00; (6) that usually such loaned fuel tanks were sold to the subsequent purchaser of the business; and (7) that in his 50 years in the oil business he

had to recover loaned fuel tanks by digging them up on only four or five occasions. Mr. Southall's testimony was unrefuted by any witness or documents in this matter.

## CONCLUSIONS OF LAW

The parties do not dispute the facts in this matter. Before this Court is the single question of law of whether the fuel tanks installed by Southall and later purchased by the debtor are items of personal property or "fixtures". The debtor alleges that the fuel tanks are items of personal property and, therefore, not subject to VNB's deed of trust. VNB, on the other hand, argues that the fuel tanks are fixtures covered by their deed of trust on the debtor's real property and, therefore, claims an interest in the fuel tanks superior to the interest in them as claimed by the debtor.

■ This Court looks to the applicable state law regarding "fixtures". The parties do not dispute what law should be applied. In Virginia when chattels are so annexed or attached to real property that they are labelled "fixtures", such chattels become a permanent part of the land or buildings to which they are attached and pass with the devise of the land. *Myers v. Hancock,* 185 Va. 454, 455, 39 S.E.2d 246, 247 (1946). Consequently, once a chattel becomes a fixture it cannot be levied upon under a writ of *fieri facias. Id.* Just as fixtures pass with a devise of the land to which they are annexed, such fixtures are encumbered by the lien of a mortgage or deed of trust on the land. This rule prevails also where the fixtures are annexed to the property sometime after recordation of a deed of trust. As stated by the Supreme Court of Virginia in *Danville Holding Corp. v. Clement,* 178 Va. 223, 233, 16 S.E.2d 345, 350 (1941):

It may be stated as a general rule that where their annexation to land is made under such circumstances as to stamp chattels with the attributes of fixtures, it makes no difference that such annexation is made subsequently to the execution of a mortgage; as between the mortgagor and the mortgagee they become subject to the lien of the mortgage, unless the

mortgagor and mortgagee agree that although affixed to the realty, they may retain their chattel nature.

■ In determining whether the fuel tanks in question here are fixtures, this Court also looks to state law. The Virginia courts have established the following tests to guide the determination of whether a chattel is, in fact, a fixture:

In the absence of any specific agreement between the parties as to the character of a chattel placed on the freehold, the three general tests are as follows: (1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intent of the parties. The intent of the party making the annexation is the chief test to be considered in determining whether the chattel has been converted into real property.

*Danville Holding Corp.,* 16 S.E.2d at 349.

■ The most thorough and well reasoned analysis of the law of fixtures in Virginia and the applicable test outlined above is found in *Danville Holding Corp.* The Supreme Court of Virginia has cited *Danville Holding Corp.* with approval frequently and recently. *See, State Highway and Transportation Commissioner v. The Edwards Co., Inc.,* 220 Va. 90, 255 S.E.2d 500 (1979); *Transcontinental Gas P.L. Corp. v. Prince William Co.,* 210 Va. 550, 172 S.E.2d 757 (1970). This test has been applied also by this Court. *See, In re Concrete Structures, Inc.,* 9 B.R. 72 (Bkrtcy.E. D.Va.1981). The court in *Danville Holding Corp.* discusses the analysis as follows:

While, under the first test, there must be actual or constructive annexation, the method or extent of the annexation carries little weight, except insofar as they relate to the nature of the article, the use to which it is applied and other attending circumstances as indicating the intention of the party making the annexation.

The second test—adaptation of the chattel to the use of the property to which it is annexed—is entitled to great

weight, especially in connection with the element of intention. If the chattel is essential to the purposes for which the building is used or occupied, it will be considered a fixture, although its connection with the realty is such that it may be severed without injury to either.

The intention of the party making the annexation is the paramount and controlling consideration. The test of intention is given a broad signification. It does not imply a secret, undisclosed action of the mind of the owner of the property. The intention need not be expressed in words; it may be inferred from the nature of the article affixed, the purpose for which it was affixed, the relationship of the party making the annexation and the structure and mode of annexation. 22 Am.Jur., Fixtures, section 6; 26 C.J., Fixtures, sections 2 and 3; 11 R.C.L., Fixtures, section 6.

16 S.E.2d at 349.

Although it is ostensibly a three-part or three-step test, in essence the test applied by most courts, including the Supreme Court of Virginia, is whether the party annexing the chattel to the realty intended to permanently improve such realty. Likewise, both parties agreed at trial and in their post-trial briefs that the primary consideration is the intent of the annexor.

Intent is always a difficult issue for a court to resolve. Because no specific agreement as to the character of the fuel tanks exists between the parties, this Court must infer the parties' intent by the nature of the circumstances surrounding the activity in question. If there was an annexation, this Court will then examine the adaptation of the chattel to the use of the realty, the annexor's relationship to the realty, the mode of annexation and the purpose of annexation to determine the intent of the annexor. If the debtor here annexed the fuel tanks and manifested intent to improve permanently the realty then the fuel tanks are fixtures. As fixtures the fuel tanks would be subject to VNB's deed of trust and VNB would have a claim to the fuel tanks superior to the debtor's claimed exemption.

■ The most difficult question facing this Court, is the effect of the debtor's purchase of these items of personal property. There must be actual or constructive annexation, *Danville Holding Corp.,* 16 S.E.2d at 349, therefore, a threshold issue is whether the debtor in fact annexed anything. The debtor contends that the only party that annexed the fuel tanks to the realty was Southall and that as to Southall the fuel tanks are items of personal property. As between the debtor and Southall the fuel tanks are indeed chattels. This conclusion is dictated because of the express agreement between Southall and the debtor, by this Court's decision in *Concrete Structures* and is conceded by VNB in its brief. The debtor argues further that this classification as chattels should carry over to the debtor in this contest between her and VNB. For this Court to hold accordingly, however, would exault form over substance and contradict existing law.

■ The debtor testified that to escape the burdensome retail dealer contract with Southall and replace it with a commission basis arrangement, she was required by Southall to purchase the tanks from him. If the fuel tanks had not been installed at the truckstop site, the debtor would have to go out, purchase, and install such fuel tanks on her own and to do so would clearly be an annexation of the fuel tanks to the realty. The debtor's method of acquisition made more economic sense in this case (because the fuel tanks had been installed), consequently the lack of actual or physical annexation by the debtor does not preclude this Court from holding that the debtor did indeed "annex" the fuel tanks to the realty by her purchase of them from Southall.

■ The debtor's act of purchasing the fuel tanks comes within the legal definition of "annexation." *Black's Law Dictionary* provides that "annexation" is

The act of attaching, adding, joining, or uniting one thing to another; ... In the law relating to fixtures, actual annexa-

tion includes every movement by which a chattel is joined or united to the property; constructive annexation is the union of such things as have been holden parcel of the realty, but which are not actually annexed, fixed, or fastened to the property.

*Black's Law Dictionary,* 81 (5th ed. 1979). Moreover, the Virginia law regarding fixtures clearly contemplates that annexation may be constructive rather than actual. In fact, the Virginia Supreme Court has stated that the "*method* or *extent* of annexation carries little weight . . . ." *Danville Holding Corp.,* 16 S.E.2d at 349 (emphasis added). Because of this diminished importance, this Court is confident that the debtor's purchase of previously embedded fuel tanks constitutes an annexation for purposes of analyzing further whether the fuel tanks are fixtures. Moreover, in annexing the fuel tanks by purchasing them, it is reasonable to conclude that the debtor adopted as her own, the previous annexation of the fuel tanks.

Having held that there was an annexation, this Court will determine the debtor's probable intent at the time the fuel tanks were purchased by considering, as set out by the applicable test, (1) the adaptation of the fuel tanks to the use of the property to which they were annexed and (2) the intentions of the annexor which include any express intentions and those that may be inferred by considering the relationship between the annexor and the realty, the nature of the fuel tanks and the mode of annexation.

The adaptation of the chattel to the use of the realty is significant in attempting to discern the annexor's intent and, thereby, whether the chattel should be treated as a fixture. *Danville Holding Corp.,* 16 S.E.2d at 349. The instant case involves three fuel tanks buried underground and connected to a truckstop by pipes and wires. They are used to store petroleum products that are ultimately sold by the debtor's business. To say the least they are an integral and necessary aspect of the debtor's business. The debtor, in fact, testified to this fact. Without storage fuel tanks the truckstop business would be impossible, therefore, the use of the annexed chattel to the subject realty suggests strongly that the fuel tanks were annexed with the intent to permanently improve the realty. As such they should be treated as fixtures. Moreover, the Virginia courts have stated that this criterion is "entitled to great weight" and this remains true even if the chattels may be severed without injury to the realty or the chattels. Thus, merely because the fuel tanks may be removed without considerable loss of value and that such tanks are on occasion so removed does not diminish the force of the "adaptation" criterion.

The final aspect of the test is the "intention of the party making the annexation." This aspect is the "paramount and controlling consideration" and, as demonstrated earlier, each aspect or consideration of the test essentially goes to the question of whether the annexor intended to improve permanently the freehold to which to the chattel was annexed. Among the factors from which intent may be discerned are (i) the relationship of the annexor to the realty; (ii) the natureof the article affixed; (iii) the mode of annexation and (iv) any express statements by the annexor.

Courts are aided frequently by a presumption in attempting to determine a party's intent in a particular matter. One such presumption, applicable to the law of fixtures, involves the relationship between the annexor and the subject realty. This presumption provides that where the annexation is performed by the owner of the realty the annexation is presumptively for the permanent enhancement and improvement of the realty and, therefore, the presumption aides a finding that the annexed personal property is a fixture. *Danville Holding Corp.,* 16 S.E.2d at 349 (citing 1 Minor on Real Property, § 36, (2d edition)). Ordinarily this presumption is sufficient to dispose of the issue in cases, such as the instant one, where some doubt remains as to the intent of the annexor. *Myers v.*

*Hancock,* 185 Va. 454, 39 S.E.2d 246 (1946); *see also, In re Concrete Structures,* 9 B.R. 72 (Bkrtcy.E.D.Va.1981). This Court, however, declines to rely solely on this presumption in the instant case because the act of annexation was simply the purchase of previously annexed fuel tanks. Although it is reasonable to conclude that the debtor adopted as her own the previous acts of annexation, this Court believes that the presumption provides greater evidentiary value where the physical acts of annexation or "actual" annexation is done by the owner of the freehold. Where the act of annexation is a passive act by the owner of the realty the Court should, as it has done here, consider all aspects of the annexor's intent and not rely solely on a presumption.

In addition to examining the relationship of the annexor to the realty, the Court has discussed previously the nature and adaptation of the chattel to the realty. Both of these factors suggest that the annexation was made with the intent to improve the realty permanently. Likewise, the mode of annexation suggests the fuel tanks are fixtures. As established by testimony, the three tanks were buried well underground and connected to the building on the realty by pipes and electrical wires. In a sense, the debtor adopted as her own the annexation of the fuel tanks by Southall. Although the method of annexation is no longer the determinative test regarding fixtures, *Green v. Phillips,* 67 Va. (26 Gratt.) 752 (1875), it remains important as to the issue of intent. *See, Danville Holding Corp.,* 16 S.E.2d at 349. In *Danville Holding Corp.,* the Virginia Supreme Court held that bakery machinery that is fastened to a concrete floor by bolts were fixtures. Therefore, the Virginia courts have found intent to permanently improve realty even where the chattels were attached by a mode less permanent in nature than burial.

In summarizing these various considerations when determining whether gasoline tanks and pumps are fixtures, one commentator has written:

> There are few, if any, of the essentials of a real fixture that an annexed gasoline

tank and pump do not meet. It is physically attached to the realty, being necessarily embedded in the earth. Some material damage, although perhaps not considerable, is caused by its removal. And where the realty is devoted to use as a "filling station," ... the tank is certainly adapted, applied, and appropriated to this use and fit for this purpose and it is a reasonable presumption that the annexor intends the tank shall be permanently annexed .... Finally, the tank is rather essential to the use and enjoyment of the property as such. It seems reasonable too, that where the business is of a more general nature, the vending of gasoline being merely one of several services, that the same rule should be applied.

Note, 12 *Va.L.Rev.* 150, 154 (1925).

Finally, had the parties herein executed an agreement regarding the fuel tanks this Court would be presented with express intentions that would likely dispose of this matter, unfortunately no such agreement was executed. However, the debtor's own testimony of her intentions with regard to the fuel tanks will aid in the ultimate determination at hand.

The debtor testified that she purchased the fuel tanks to relieve the truckstop business of the existing retail sales agreement with Southall. She testified further that she attempted to sell the truckstop with the fuel tanks because the tanks were essential to the business and increased the attractiveness of the business to a prospective buyer. In addition, she testified that she did not attempt to sell the fuel tanks without the truckstop. These statements by the debtor suggest further that the fuel tanks should be characterized as fixtures because after the debtor purchased them she never treated them as anything but part of the overall truckstop. Filing the homestead deed and claiming the fuel tanks as exempt property on her bankruptcy schedules is apparently the first occasion on which she treated the tanks as separate and distinct from the realty.

As a final matter, this Court will address the debtor's argument that previous prece-

**512**

dent of this Court controls the issue at hand.

The debtor contends that this Court's opinion in *In re Concrete Structures,* 9 B.R. 72 (Bkrtcy.E.D.Va.1981) disposes of this matter in the debtor's favor. This Court held in *Concrete Structures* that a building erected on realty by a party other than the owner of the realty is not presumptively a fixture. In that case the plaintiff erected a prefabricated building on another party's realty. The realty was then purchased by the debtor. When the debtor filed bankruptcy a dispute arose between the plaintiff, who constructed the building, and the debtor who owned the property on which the building was constructed. This Court held that where the landowner consents to the placing of a building on his land by another without an express agreement as to whether it shall become a part of the realty or remain personalty an agreement will be implied that such building is to continue personal property. *In re · Concrete Structures,* 9 B.R. at 74.

The case at hand has an additional layer of complexity that distinguishes it from *Concrete Structures.* The instant matter differs from the facts in *Concrete Structures* in that title to the annexed chattel in *Concrete Structures* was retained by a third party, and the dispute was between the third party and the landowner, whereas here title to the chattels in question is in the landowner and the dispute is between the landowner and the secured creditor. Moreover, this Court rested its decision in *Concrete Structures* on the presumption that improvements made by someone other than the landowner are not fixtures, whereas in the instant case, the improvements (i.e. fuel tanks) to the real estate were made by the landowner herself at the time of purchasing the fuel tanks.

Having distinguished the instant case from this Court's earlier decision in *Concrete Structures,* and being satisfied from an analysis of the applicable law that the subject fuel tanks are fixtures, this Court holds that the exemption claimed by the debtor in the fuel tanks is inferior to the

prior lien of VNB's properly recorded deed of trust.