PROVIDENCE GAS CO. *v.* ISAAC THURBER ET AL.

A personal chattel does not become a fixture, so as to be a part of the real estate, unless it be so affixed to the freehold as to be incapable of severance from it without violence and injury to the freehold; and if it be so annexed, it is a fixture, whether the annexation be for use, for ornament, or from mere caprice.

The grant to a corporation by charter, repealable at the will of the legislature, of a right to lay gas-pipes in the public streets, is not a mere revocable license, but an easement or incorporeal hereditament, and the pipes, laid by virtue of it, are fixtures, and it is not competent for the grantees of the right to urge that the grant is void, because no compensation has been allowed to the owners of the soil.

This was an action to recover two hundred and fifty dollars, being a portion of the tax assessed upon the Providence Gas Co. The case was argued to the Court upon an agreed statement of facts, from which it appeared: That the defendants as assessors of taxes of the City of Providence, for the year 1849, assessed the plaintiffs in the sum of four hundred dollars, for real estate valued at eighty thousand dollars, including in said assessment the gas-pipes of the plaintiffs laid in the streets of said City, and valued at fifty thousand dollars, as well as their lands and buildings, valued at thirty thousand dollars. The pipes were of iron; mostly of nine feet in length, with a socket at one end and connected in two different ways, a part of them being united by lead joints and a part by packing yarn and cement. The building for the manufacture of the gas was situated at the corner of Benefit and Pike

streets. The gas was stored in gas holders, from whence it passed by a pipe leading into the Governor, situated within said building. This pipe entered the bottom of the Governor, and was attached thereto by flange and bolts. The main outlet pipe was also attached to the bottom of the Governor in the same manner, and passing perpendicularly into the ground to the depth of about three feet, within the area of the building, and thence extending horizontally under ground within said area at the same depth, was continued under ground (united by joints as above described) through or under the walls of the building and through the principal streets of the city. The service or supply pipes were connected with the main pipe by drilling the main pipe and screwing on the service pipes, which were carried under ground to the inside of the walls of buildings, and the meter was there attached, and from the meter the gas was distributed in smaller pipes as desired. The section of the Charter which authorizes the Gas Co. to lay the pipes in the steeet, is as follows : " Sec. 2. Said Company shall have power and authority, with the consent of the Board of Aldermen of said City, to open the ground in any part of the streets, lanes and highways in said City, for the purpose of laying and repairing pipes for conducting said gas.".

The Board of Aldermen in August, 1848, voted: " That consent be given to the laying of the pipes of said Company, they in all cases complying with the provisions of " An ordinance in relation to streets and highways," provided, that nothing in this consent be construed to prevent the city from building culverts or otherwise improving any highway, but in all cases when said pipes are in the way of constructing any culverts or other improvement, they shall be removed by the Gas Co."

By the 10th section of the Charter the corporation is made subject to the provisions of "An act in relation to Manufacturing Corporations," passed at the June Session of the General Assembly, A. D. 1847.

*Ames* and *Payne*, for the defendants, contended :

1st. By the 2d section of their Charter, and the vote of the Board of Aldermen in pursuance thereof, the right was granted to the plaintiffs to lay their pipes in the streets of Providence, under the direction of the Board of Aldermen. What is the effect of this grant ? The streets are owned by the public for public purposes—and it is an ownership which enlarges with the demands of the public. The first public right is that of travel, but the right of laying drains and aqueducts and gas pipes arises when the public needs them. Now this right of laying pipes has been granted by the public, without reservation except that it is to be done under the supervision of the Aldermen. The effect of the grant is to vest the use of the street for this purpose in the Gas Co. during the life of the Company. The grant has been vested and cannot be revoked, though the charter may be repealed. The vested rights of a public and much less of a private corporation cannot be impaired by the legislature. (2 Kent, pp. 275—306, note b 309.) This right then is an easement, not capable of corporeal seizin, but deriving its existence from the realty, and according to the well-known rule, the pipes would follow the character of the property of which they are an incident. Or, if you call it a license, it is a license granted by an act of the legislature, under which the Co. have acquired vested rights in real estate. A personal license in real estate is real estate, unless it is granted merely by parol, and is revocable at will, which

is the ground on which it has been held to be personal property.

2. The gas-pipes are fixtures. This Company owns real estate to which these pipes are necessarily attached, for the purposes for which they and the real estate are used. This makes them fixtures. A fixture is a thing affixed to the freehold. (2 Kent 345, note a. 8 Missouri R. 444. Gibbons on Fixtures, pp. 1, 2, 38, 39.) By a fixture is not meant a thing which cannot be removed, but rather a thing which may be removed, but which while it remains is a part of the realty. (2 Kent 343. Gibbons pp. 11, 12.) These pipes are actually annexed to the freehold and used with it. They are laid in the freehold of the street, by virtue of a grant from the State, and partake of the nature of that freehold. (Dig. of 1844, sections 32 and 34.) They are also affixed to the Gas-Works. In the case of a mill, the trenches and raceways leading to and from the mill would pass by grant of the mill as an appurtenance thereto. Yet the trenches are no more real estate than these pipes. They are merely pipes open at the top. Suppose this Company should sell the Gas-Works and all its fixtures and appurtenances, would not the pipes pass with them ? The sleepers and rails of a rail-way lie on the ground, and yet they are taxed as real estate. The point established by 2 Smith's Leading Cases 212, is not that the fixtures must be essential to the use of the soil to which it is annexed, but that where a thing is essential to the use of the freehold, it may be a fixture though not annexed.

The counsel likewise cited *The Queen* v. *Cambridge Gas Light Co.* (35 Eng. Com. Law R. 333,) and *The Queen* v. *The London, Brighton and South Coast Railway Company,* (3 Eng. L. & E. R. 329.) *Regina*

v. *The Southampton Dock Company*, (Ibid. 464) to show that these pipes were taxable as real estate.

*Bradley* and *Mathewson*, for the plaintiffs, contended :

1. From a review of the authorities in 2 Smith's Leading Cases, pp. 212, 213 and 214, it was laid down that to constitute a thing a fixture, it should be not only annexed to the freehold, but essential to the use to which that freehold is applied. These pipes have neither of these characteristics. By a fixture is ordinarily meant something affixed directly to the freehold, not pipes running off link after link for miles from the freehold. This is carrying the idea of annexation farther than there is any authority or principle to sustain it. On the same ground the wires of a telegraph might be held fixtures of the office. Though there are pipes and aqueducts of all kinds frequently spoken of in the decisions, yet there is no authority to show that they are fixtures of any building or lot. And if they were so at common law, they would be personal property in this case, because they are not attached to the freehold but to an apparatus which by the statute is itself personal property, and the incident follows the principal. (Dig. of 1844, p. 261 sec. 2.) And secondly the fixtures should be essential to the use of the freehold. These buildings are employed in the manufacture of gas, and anything annexed, which is essential to the manufacture of gas would be a fixture. These pipes are the machinery for distributing and selling the gas, and the manufacture of it could be carried on without them.

2. This right to lay the pipes is not an easement in the streets of the city, but a personal license to the corporation. This right is revocable ; an easement cannot be revoked. Gale & Whately, pp. 13, 21. The charter may be re-

pealed. Such a right is personal property. *Ashmun et al.* v. *Williams et al.*, (8 Pick. 462.) *Marcey* v. *Darling*, (8 Pick. 283.) *Putney* v. *Day*, (6 N. H. 430.) The right, being personal to the Company and revocable, is to be governed by the analogies of parol license rather than of easements, which are rights inhering in the soil and cannot be revoked. So far it has been assumed that the party making this grant owned the fee in the streets. The party here does not own the fee but merely an easement in the streets and have granted a *right,* if this is an interest in the land, which was not necessary to the public use, without the consent of the owners. Now, though we cannot deny the title of our grantor, yet the Court will not suppose the grantor has given a greater right than he possessed, unless they are obliged so to construe it. If this is an interest in land it could not pass without the formality of a deed. But if it is a right or power to do certain things, if it is a delegated jurisdiction (so to speak) of the public, then it might be granted by the legislature and in this manner. " Power and authority" are the words employed in the charter ; that, they could confer, but not an interest in land, without compensation to the owners, which distinguishes this case from that of railroads.

The English decisions, cited by the defendants counsel, were decided under the 43d Eliz. ch. 2, which directly taxes the occupier. It has been decided under this statute that the laying of pipes in land is an occupation of the land. Our statute (Dig. of 1844, p. 426, sec. 6) authorizes the tax to be levied upon the owners of real estate or those who hold and occupy the same. Under the English statute these pipes would undoubtedly be taxable, because that statute authorizes the taxing of an occupation which was not real estate. But under ours they cannot be taxed

unless our right to the occupation or use of the land is itself real estate. And we contend that it is personal property.

They also cited *The King* v. *Thomas*, (17 Eng. Com. Law 342.) *The King* v. *The Company of proprietors of the Mersey and Irewell Navigation*, (Ibid. 341,) and *The Chelsea Waterworks Co.* v. *Bowley*, (Law Times, August, 1851.)

The opinion of the Court was delivered by

GREENE, C. J. It is agreed that the defendants, as assessors of taxes for the city of Providence, assessed the plaintiffs for their gas pipes, laid in the streets of the city. The ground upon which the assessment has been made is, that these pipes are fixtures, and, therefore, real estate in the sense of the act regulating the assessing and collecting of taxes. The sixth section of that act provides as follows: " The assessors of taxes in the several towns, in assessing taxes for real estate, may assess the same either upon the owners of the real estate, or upon the person who hold or occupy the same."

If the pipes in question are real estate, the assessment has been rightly made. If on the other hand they are personal estate, it is conceded by the counsel for the defendants that the assessment was illegal, and the plaintiffs entitled to judgment.

The only question in the case, then, is whether these pipes are fixtures.

In *Farrar* v. *Stackpole*, (6 Greenleaf 157,) it was held that where machinery was essential to the purposes for which a building is employed, it must be considered as a fixture, although only attached to other machinery and

not to the premises themselves, and capable of being removed without immediate or physical injury of any sort.

In *Voorhies* v. *Freeman* and *Pyle* v. *Pennock*, (2 Watts & Sergeant 115, 390,) the Supreme Court of Pennsylvania adopted the same rule.

The Supreme Court of Massachusetts in *Gale* v. *Ward*, (14 Massachusetts 352) decided, that the annexation of the fixtures must be such as to render removal impossible, without physical injury to the freehold.

In *Smith* v. *Thompson* (9 Conn. 67,) the Supreme Court of Connecticut held, that a simple annexation to the freehold was not sufficient ; that the annexation must be such that an injury would result from the mere act of removal independently of the subsequent want of the chattel removed.

In *Walker* v. *Sherman*, (20 Wendell 638) the Supreme Court of New York held annexation to be necessary, although the chattel may be adapted to the uses for which the freehold was employed.

There is some conflict in the decisions of Courts and in the opinions of jurists upon this subject.

We think the true rule is, that a personal chattel does not become a fixture so as to be a part of the real estate, unless it be so affixed to the freehold as to be incapable of severence from it without violence and injury to the freehold ; And, if it be so annexed, it is a fixture, whether the annexation be for use, for ornament or from mere caprice.

In the present case, the pipes are sunk in the soil of the streets, to the depth of several feet under the surface, and cannot be removed without digging up the earth, and, if the Gas Co. owned the land in which the pipes were laid, we should have no doubt they would be fixtures,

But being laid in the public streets, by consent of the Board of Aldermen, under power granted to the corporation by the second section of their charter, the question is whether such annexation gives them the character of fixtures.

The charter of the corporation is liable to be repealed by an act of the General Assembly, whenever that body shall think proper to pass such an act.

This arises from the tenth section of the charter, which by this section is made subject to the provisions of "an act in relation to Manufacturing Corporations," passed at the June session, 1847.

On the part of the plaintiffs, it is contended that the power was a mere license, revocable at the will of the General Assembly, and the pipes, being laid under this license, cannot thereby become fixtures, and the case was likened to a class of cases, in which it has been held that if A erect a building on the land of B by parole license from B, such building is a personal chattel. *Ashmun et al.* v. *Williams,* (8 Pick. 402.) *Marcey* v. *Darling,* (8 Pick 283.) *Aldrich* v. *Parsons & Latham,* (6 N. H. Rep. 555.)

If these pipes had been laid in the land of an individual by parole license, they would not become fixtures thereby. But if the owner had granted by deed the right in fee to lay the pipes through his land, they would be fixtures, because the annexation would be under legal title.

So if A built his house in B's land, under a grant by deed of a right in fee so to do, the house would become real estate.

Is the grant of power contained in the charter when executed, of no more effect than the parole license of an individual, revocable at his will? Are the corporation to

be considered as tenants of their charter and of all the rights and property they hold under it, at the will of the General Assembly? Nearly all the charters which have been granted in Rhode-Island for many years past are subject to repeal, especially Banking and Manufacturing corporations. A deed of land to such corporation and their successors conveys a fee, just as much as if they were not subject to repeal. And so corporate rights and franchises generally, under a repealable charter, are the same until the charter is repealed, as if not subject to repeal, and such is the case with the rights and franchises of the plaintiffs. It was further objected by the plaintiffs, that the grant was void because no compensation was provided for the owners of the land; but however valid this objection might be if made by the owners of the land, we do not think it competent for the plaintiffs to urge it, they being the grantees of the power and having exercised it under the grant. So far as the present question is concerned, we consider the case the same as if compensation had been provided.

What then is the nature of the right which the plaintiffs take under their charter? We think when exercised it is an easement—an incorporeal hereditament, like the right of a railroad company to build and occupy their road, or a canal company their canal, under the provisions in their charter which grant the power to take the land, upon rendering compensation to the owners.

In Binney's case (2 Bland's Ch. Rep. 145), the Chancellor held, that the whole estate of the Chesapeake and Ohio Canal Company, at least so far as it consisted of the canal itself, and its necessary buildings and the fixtures attached to the same, must according to the common law be regarded as realty.

In the case of the *Boston Water Power Company* v. *The City of Boston* (9 Met. 202), the grant to the Water Power Company was of a right to use a portion of the public land covered with navigable water for the use of their mills, in other words a perpetual easement for the use of their mills. This easement was held to be taxable as real estate.

The counsel for the Water Power Co. did not deny that the easement was real estate, but claimed to be exempt from the tax upon other grounds.

In *Drybutter* v. *Batholomew*, (2 Piere Williams 127,) it was held, that the wife could not be barred of a share in *New River* water, of which the husband was seized in right of the wife, without a fine.

In *Buckeridge* v. *Ingram*, (2 Vesey Jr. 652,) it was held that shares in the navigation of the river Avon, under the statute 10th Ann, were real estate and subject to dower. The Master of the Rolls, in giving his opinion, said, the act of Parliament could not be construed to have taken out of the proprietors and given to this corporation the soil, but it gave them a right in and over the soil and certain real rights arising in and out of the soil.

To the same effect is the opinion of Lord Coke. He says, Every hereditament, which in any degree arises out of land, affects the same or is exercisable within the same, has all the properties that belong to real estate. Co. Lit. 19.

In the case of the *Queen* v. *Cambridge Gas Co.* (35 Eng. Com. Law Rep. 333,) the Court decided that the company were ratable, as occupiers of the land, in the different parishes, by their apparatus, pipes, &c. under the statute of 43 Eliz. ch. 2.

The same rule was applied to a Railway Co. in the case of the *Queen* v. *London, Brighton and South Coast Railway Co.* (3 English Reports 329.)

The statute of Elizabeth subjects every occupier of lands, houses, &c. to be rated, and the Gas Co. by their pipes, apparatus &c., and the Railway Co. by their road were considered as occupiers of the land in which the pipes were laid and on which the road was built.

The statute of Rhode Island bears some resemblance in this respect to the act of Elizabeth. It subjects the owners of the real estate, or the persons who hold or occupy the same.

But the tax has not been assessed on the plaintiffs as occupants of the land by their pipes &c., but upon their pipes as real estate. And these pipes, being annexed to the freehold, and the Gas Co. having an easement in fee, or right so to anex them and to use them, we think they are fixtures, and rightfully assessed as real estate.

The case of *Chelsea Water Works Co.* v. *Bowley*, reported in the Law Times for August, 1851, is relied upon by the counsel for the plaintiffs. That case arose under the land tax act, 38 Geo. 3, ch. 5. The words of this act are " bodies corporate having or holding any land or hereditament." The 17th section of the act authorizes the tenant who has paid the tax, to deduct it out of the rent. Lord Campbell, in giving the opinion of the Court, inferred from this provision, that no other lands and tenements were intended to be assessed by the act, than such as might be let by landlord to tenant. This provision, he thought, entirely inapplicable to the case at bar, and the decision mainly turns upon this point. He says the Company are not the owners of the land where the pipes lie, nor are they tenants of the land, and there is no rent from

which they could deduct the amount of the assessment, when they had paid it. He considered the right of the company, when exercised, in the nature of an easement, and not in the nature of the possession or occupation of land or hereditaments.

And yet in the cases which we have cited under the statute, the Gas Company and the Railway Company had been held liable under that statute to assessment as occupants of the land.

However that may be, our statute contains no provision like the 17th section of the act of Geo. III, but, in the important particular already adverted to, does bear a strong resemblance to the 43 Elizabeth. It subjects real estate and makes the owner, tenant or occupant liable for the tax.

*Judgment for the defendants.*