**In re Timothy BANKS, Gladys Banks, Chapter 7 Debtors.**

**Altegra Credit Company, Plaintiff,**

**v.**

**Timothy Banks, Gladys Banks, and Harry Shaia, Jr., Trustee, Defendants.**

**Nos. 99–34944–T, 99–2120–T.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

March 14, 2001.

Frederick H. Kruck, Jr., Warrenton, for Altegra Credit Company.

Ellen P. Ray, Richmond, for Debtors.

Christopher T. McGee, Spinella, Owings and Shaia, P.C., Richmond, for Chapter 7 Trustee.

Gregg R. Nivala, Office of the U.S. Trustee, Richmond, Assistant United States Trustee.

## MEMORANDUM OPINION (AMENDED)

DOUGLAS O. TICE, Jr., Chief Judge.

An evidentiary hearing was held December 22, 1999, on Altegra Credit Company's motion for relief from stay to permit it to foreclose on its security interest in debtors' real property. This contested matter involves a priority dispute between the trustee in bankruptcy and Altegra who claims a security interest in a mobile home. The issue is whether the mobile home placed upon debtors' real property subject to foreclosure has been annexed to the realty under the common law doctrine of fixtures. For reasons stated in this memorandum opinion, the court rules that the mobile home is part of the realty, and the motion for relief from stay will be granted.

### Facts

On September 18, 1995, the Commonwealth of Virginia's Department of Motor Vehicles (DMV) issued a certificate of title to debtors for a new Fleetwood double-wide mobile home. Vanderbilt Mortgage and Finance, which originally financed the purchase, is the first and only lienholder shown on the title. Debtors have not canceled the title to the mobile home as provided for under Virginia Code § 46.2–653; thus the home is still titled with the DMV.

In 1996, the debtors' mobile home was delivered to its present location in two units. The wheels, hitches and towing tongues were removed. The home, consisting of the side by side units, rests on cinder block piers but does not have any tie-downs. External improvements include two small wooden porches/steps at each door, a heating/air conditioning unit, and vinyl skirting around the entire base. The home is connected to an electrical box servicing the property, propane tanks, septic, and water well.

For 1996 and all subsequent years, the county has assessed and taxed the mobile home as part of the real estate. Property tax bills indicate that the lot was zoned rural residential. The lot is of sufficient size to accommodate either a mobile home or a stick built home. The 1999 real estate tax bill assessed the property at $62,700.00: $12,300.00 land, and $50,400.00 building (mobile home).

On April 8, 1997, debtors refinanced the property with Equity One of Virginia, Inc., by executing a promissory note secured by a deed of trust on real estate. The deed of trust stated that the security included "a 1996 Fleetwood Lake Springs mobile home serial # NCFLS69AB11307LS13". On that same date, Equity One assigned the promissory note and security deed to Altegra Credit Company. The deed of trust was duly recorded in the real estate records at the county clerk's office, and on May 6, 1997, Vanderbilt released its lien on the title at the DMV. Neither Equity One nor Altegra recorded their lien on the title.

On July 19, 1999, debtors filed this chapter 7 bankruptcy case. Debtors are in default under the terms of the note and deed of trust. All parties agree that the debtors have no equity in the property. All parties also agree that Altegra has a valid first trust on the real estate and is entitled to relief from the automatic stay in order to foreclose on the real estate. However, the parties do not agree on the whether the mobile home has been con-

verted from personal property to realty so that it will be included in the real estate foreclosure.

### Position of the Parties

Altegra contends that the mobile home has been permanently affixed to realty and is now considered part of the debtors' real property; therefore it has a deed of trust in both land and mobile home.

The trustee responds that Altegra knew that the refinancing included a mobile home, yet failed to attach its lien to the DMV title. By not recording its status as a lienholder on the mobile home title, Altegra has an unperfected interest in the mobile home. Thus Altegra should be treated as an unsecured creditor in the bankruptcy case without standing to bring a motion for relief from stay as to the mobile home. Moreover, the trustee as hypothetical lienholder under 11 U.S.C. § 544 takes a superior position over Altegra's unsecured claim.

### Conclusions of Law

██ Whether a mobile home placed upon real property subject to foreclosure has become part of the realty must be decided on a case-by-case basis, the outcome of which depends on how the common law doctrine of fixtures apply to the facts and circumstances of each case.

██ The Virginia Supreme Court has set forth the following guidelines:

Three general tests are applied in order to determine whether an item of personal property placed upon realty itself becomes realty. They are: (1) annexation of the property to the realty, (2) adaptation to the use or purpose to which that part of the realty with which the property is connected is appropriated, and (3) the intention of the parties. The intention of the parties making the annexation is the chief test to be considered in determining whether the chattel has been converted into a fixture.

*Transcontinental Gas Pipe Line Corp. v. Prince William County*, 210 Va. 550, 172 S.E.2d 757, 761–62 (1970). The Virginia Attorney General, in discussing whether mobile homes should be taxed as tangible personal property or as real property, has suggested a nonexclusive list of relevant factors which may be examined to determine the intent of parties making the annexation.[1]

The intention of the debtors in annexing the mobile home to their realty is not clear. They moved the mobile home to its

---

1. The Virginia Attorney General, stated as follows:

In determining the intent of the parties making annexation, numerous factors may be considered. I suggest that the following list is representative, but not exclusive, of the relevant factors:
1. The nature of the physical alterations which have been made to the exterior of the unit.
2. The nature of the utility connections to the unit.
3. The size of the lot upon which the unit has been placed.
4. The manner in which matters of title to the mobile home are handled.
5. The manner in which matters of title to the underlying real property are handled.
6. The manner in which the unit will be transported to the lot on which it will be placed.
7. The type of foundation upon which the unit rests.
8. The means by which the unit is secured to the foundation.
9. Whether individual units will be used in combination with other individual units to create the residential living space and how such units will be connected.
10. Any other factors not previously mentioned which will reduce or eliminate the likelihood that the unit may later be removed and transported to another location.

See 1983–84 Va. Op. Atty. Gen. 402 (1984).

However, the Attorney General has opined:
Based on prior Opinions of the Office and the express intent of the legislature in the revised definition of mobile homes [as provided in Virginia Code § 36–71(4)], it is my opinion that removal of axles and wheels and placement upon permanent foundation alone is not sufficient evidence to take the property out of the separate classification of tangible property established by § 58–829.3.

See id.

present location from another location. While the individual units could be moved again by reattaching the wheels and hitches and towing them away, the debtors have used them at the present location as a residence. The debtors also executed a deed of trust when they refinanced their property which stated that the security included the mobile home along with the real property. This at least suggests debtors intended the mobile home to be included with the realty since there was no other security instrument. Certainly the lender intended for the whole to be treated as real property.

The Virginia Supreme Court has indicated that "[w]hen the owner of land annexes chattels, any doubt as to his intention to annex them permanently will usually be resolved in favor of such intent." *Transcontinental Gas Pipe Line Corp.*, 172 S.E.2d at 762. Based upon all of the circumstances, the court finds that debtors intended for the mobile home to become a fixture to their real property. In addition, the annexation of the mobile home to the realty meets the other tests prescribed by the Virginia Supreme Court. *See id.* at 761.

Although the fact that the debtors did not surrender the certificate of title may arguably be evidence of the their intent not to affix the mobile home to the realty, it is not conclusive evidence. Virginia Code § 46.2–653, in pertinent part, provides:

After a manufactured home has been titled in the Commonwealth and at such time as the wheels and other equipment previously used for mobility have been removed and the unit has been attached to the realty, then the Virginia title issued for the unit may be returned to the Department for cancellation and the unit shall *thereafter* be transferred only as real estate is transferred. The validity of any security interest perfected pursuant to §§ 46.2–636 through 46.2–641

shall continue, notwithstanding the provisions of this section.

Va.Code § 46.2–653 (emphasis added).

Without a certificate of title, the owner may not legally transport the mobile home on highways of the Commonwealth. *See* Va.Code § 46.2–600 (1998) (indicating that every person who owns a motor vehicle shall obtain a certificate of title before operating). Furthermore, in order to legally sell or otherwise assign the title to the mobile home, the owner must have in his or her possession a DMV certificate of title for the mobile home. *See* Va.Code § 46.2–617 (1998) (making it a class 3 misdemeanor to sell, trade, exchange or barter a motor vehicle without legally having in his possession a certificate of title for the mobile home issued to its owner); *see also* Va.Code § 46.2–628 (1998) (detailing how to transfer or assign a certificate of title and making it a class 3 misdemeanor to wilfully fail to fully and correctly endorse the assignment and warranty of title). However, surrender of the certificate of title does not prevent the owner from obtaining another certificate of title for the same mobile home at a subsequent time.

Finally, the court must note that Altegra knew or should have known that the mobile home's title had not been surrendered and was in a position to avoid the confusion created here by insisting that the home owners surrender the certificate of title. On slightly different facts and circumstances the outcome may have been less favorable to Altegra. In the future, prudent lenders may avoid jeopardizing their security interests by perfecting in the real estate records and on the title or insisting that the home owner surrender the certificate of title.

An order consistent with this opinion will be entered.